UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 APR 18 PM 2: 19

CLERK

BY _*EH*_
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:22-cr-29 |
| | ) | |
| MELVIN HILL, | ) | |
| | ) | |
| Defendant. | ) | |

**DECISION ON MOTION TO SUPPRESS AND ORDER ON REMAINING MOTIONS**
**(Docs. 41, 45, 49, 50, 51, 56, 58, 77)**

Melvin Hill is accused of two counts of distribution of fentanyl. (Doc. 14.) Both relate
to controlled buys conducted on February 10 and March 8, 2022. He has filed multiple pro se
motions. (Docs. 41, 45, 49, 50, 51, 56, 58.) On March 8, 2023 and March 22, 2023, the court
held an evidentiary hearing concerning his counsel's motion to suppress cell phone tracking data
(Doc. 77). Burlington Police Officers Philip Tremblay and Zachary Beal testified. Defense
counsel submitted a post-hearing memorandum on April 15, 2023. (Doc. 86.) The prosecution
has advised that it is content with the briefing already before the court. This decision addresses
that suppression motion and Mr. Hill's other pending motions.

## FACTS

In January 2022, a confidential informant told law enforcement that she could buy drugs
from "Pablo Escobar." The drugs were sold in distinctive envelopes also marked "Pablo
Escobar." A controlled buy followed on February 10, 2022. The confidential informant also
supplied law enforcement with the telephone number she used to reach the dealer. Police ran
this number through an online database of subscriber information. The search identified the
subscriber as Melvin Hill from the state of Georgia.

In the course of the first controlled purchase, law enforcement took note of the plate number on the car used by the seller. The plates came back registered to Melvin Hill. Investigators were also able to identify Mr. Hill through a photograph supplied by the United States Marshals Service. Mr. Hill had previously been convicted of a drug offense in the District of Vermont.

On February 14, 2022, the Vermont Superior Court issued a search warrant requiring Mr. Hill's phone carrier Verizon to provide GPS location data from the phone for 10 days. In compliance with the warrant, Verizon supplied GPS information every quarter-hour. A second warrant issued on February 24, 2022, extending the period of the search by 30 days. From this information, law enforcement learned that Mr. Hill was staying in a motel in Plattsburgh, New York and driving every day to Burlington, Vermont.

On March 8, 2022, law enforcement conducted a second controlled buy from Mr. Hill. By this time, the phone location data indicated that he had moved to the DoubleTree Hotel in South Burlington.

On March 9, 2022, law enforcement obtained search warrants for Mr. Hill's hotel room and car. They arrested him on March 10, 2022. At the time of his arrest, he was carrying a loaded handgun. The car and the hotel room contained narcotics, $13,000 in cash, packaging materials, and distribution-level quantities of fentanyl (45 grams), methamphetamine (63 grams), powder cocaine (45 grams) and crack cocaine (12.9 grams).

At the time of his arrest, Mr. Hill also possessed keys that the investigators thought resembled the keys to a storage locker. A review of the GPS data from the phone showed that he had been on Flynn Avenue in the vicinity of a storage facility on March 9, 2022 at 5:30 p.m. On March 10, 2022, investigators visited the Flynn Avenue Self Storage facility, where they learned

that Mr. Hill had rented a storage unit in December 2021.  Two keys on Mr. Hill's ring fit the lock on the exterior of his storage unit.

The investigators obtained a federal search warrant for the storage unit.  The search revealed additional evidence of drug trafficking.

## I.      Suppression Motion (Doc. 77)

### A.      Download of Cell Site Location Information

In *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Supreme Court addressed the application of the Fourth Amendment warrant requirement to the search of historical location information derived from an individual's cell phone account.  The Court rejected the Government's position that an administrative subpoena was sufficient to authorize the release of this information because it was maintained by a third-party and required a warrant for location information regarding a suspect's movements in the past.  "[W]e . . . conclude that the Government must generally obtain a warrant supported by probable cause before acquiring such records."  *Id.* at 2221.  The decision anticipates that in future cases—as here—the Government will request a warrant.  "Before compelling a wireless carrier to turn over a subscriber's CSLI [cell-site location information], the Government's obligation is a familiar one—get a warrant." *Id.*

*Carpenter* reserved for another time whether a warrant is required for information released in real time.  The focus of the analysis in *Carpenter* on the comprehensive scope of the intrusion into an individual's privacy made possible using information generated by his cell phone would seem to apply with equal force to any search of CSLI, whether for historical information or, as here, for information to be collected for 40 days into the future.  In resolving

the suppression motion, the court assumes that the warrant requirement applies to the real time investigation of Mr. Hill's location.

In this case, law enforcement complied with the primary directive of *Carpenter*. They obtained a warrant (and later extended it through a second warrant). For this reason, the issues before the court are whether the issuance of the two warrants was supported by probable cause and whether, as Mr. Hill argues, the warrants amounted to impermissible "general warrants."

Following the first controlled buy in February 2021, law enforcement knew that Mr. Hill was engaged in drug trafficking. At that point, his movements were of interest to investigators who wished to understand how his operation functioned. They could have arrested him at the site of the controlled buy. Instead, they chose to watch and wait, developing additional information about where he lived and where he might conceal his stash of contraband.

For purposes of the Fourth Amendment, following the controlled buy, there was probable cause to believe (1) that a crime had been committed; and (2) that the places where Mr. Hill stayed might contain evidence of his offense. *Carpenter* imposes a warrant requirement not because a person reasonably suspected of drug trafficking cannot be followed or tracked. It imposes the requirement because of the extraordinary breadth and power of the electronic search. Following Mr. Hill in person would not require a warrant. Following him through his cell phone does. But the standard for what constitutes a crime and the likelihood of discovering evidence is not changed by the electronic format of the search.

In this case, there was strong reason to believe that Mr. Hill was a drug dealer after he sold fentanyl to the confidential source. The affidavit submitted in support of both state court warrants contained detailed description of the transaction. In addition, the evidence that Mr. Hill was engaged in drug sales included a description of repeated sales of drugs in envelopes marked

"Pablo Escobar" as well as frequent stops by Mr. Hill's car on Main Street in Burlington with brief visits by multiple individuals. The affidavit further corroborated Mr. Hill's likely involvement in drug trafficking by placing information about his prior federal prosecution and multiple arrests on state charges. (Def.'s Ex. C.)

The court DENIES the motion to suppress the information obtained through the two state court warrants.

### B.    Search of the Storage Unit

Mr. Hill seeks to suppress the search of the storage unit on the ground that "the government had no information to suggest that the storage unit was used by Mr. Hill to store contraband or evidence" and that "the Government did not even know about the storage unit until after his arrest." (Doc. 86 at 1.) This information was obtained following issuance of a federal search warrant. The application for the federal warrant contains ample information to support a finding of probable cause to search of the storage unit. It includes the following:

- Mr. Hill had participated in two controlled buys of fentanyl during the months of February and March 2021. Law enforcement arrested Mr. Hill on March 10, 2021, outside of the DoubleTree Hotel in South Burlington where he was staying. He was carrying a loaded handgun. Following his arrest, law enforcement seized cash ($13,000), narcotics and drug trafficking paraphernalia including a scale and multiple forms of packaging from his car and his hotel room. The drugs included 561 fentanyl pills; 550 wax folds containing powder that tested positive for fentanyl; 45 grams of powder cocaine; 63 grams of methamphetamine; and 12.9 grams of crack cocaine.

- At the time of his arrest, Mr. Hill was carrying keys that resembled keys used to secure storage lockers. Location information derived from Mr. Hill's cell phone placed him

near a storage facility on Flynn Avenue on March 9, 2022.  Staff at Flynn Avenue Self Storage located at 199 Flynn Avenue identified him as the customer who had rented a unit since early December 2021.

- In his post-arrest interview, Mr. Hill admitted to selling illegal drugs since September 2021.  When asked about the storage unit, Mr. Hill did not deny having a unit. He withheld consent to search and requested that law enforcement get a warrant before any search.

- In the experience of the investigators, it is common for drug traffickers to conceal contraband, proceeds of drug sales, and records in secure locations such as storage units.

Whether there was sufficient information to support the issuance of the warrant requires the court to apply a "totality-of-the-circumstances approach" to answer "the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213 (1983).

Framed in the pragmatic form contemplated by the Supreme Court in *Gates*, the probable cause inquiry is readily resolved in the Government's favor.  The magistrate judge was informed that an admitted drug trafficker, active for several months in the Burlington area, had rented a local storage locker.  Law enforcement had already found a substantial quantity of drugs in his car and hotel room.  Law enforcement also knew that cell phone data placed Mr. Hill near the location of his storage unit one day before his arrest.  Mr. Hill confessed after his arrest to selling illegal drugs for profit since approximately September 2021.

Taken as a whole, this information supports the magistrate judge's determination that there was probable cause to believe that additional evidence of drug trafficking could be located in the storage unit.  By the time of his arrest on March 10, 2022, Mr. Hill had been involved in

drug sales for more than six months. He was staying in a hotel. The likelihood that he was concealing contraband or other evidence of wrongdoing in his storage unit was very high.

The court does not agree with the defense that the search warrant was an impermissible general warrant. Obviously the investigators cannot supply information about the contents of the unit until they have searched it. But the information about Mr. Hill's drug trafficking coupled with his stay at a hotel and his rental of the storage unit in Burlington for many months satisfies the requirement of "individualized suspicion" before a search of seizure may take place. *United States v. Martinez-Fuerte*, 428 U.S. 543 560–61 (1976).

Mr. Hill does not question the accuracy of any of the information in the affidavit. Read as a whole as contemplated by *Gates*, this information gives rise to a reasonable inference that Mr. Hill needed a location to hide the drugs he was distributing and that his storage unit was the most likely candidate. *See United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999) ("The nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide evidence of a crime." (cleaned up) (citing cases and calling into question *United States v. Gomez*, 652 F. Supp. 461, 463 (E.D.N.Y. 1987))).

The court DENIES Mr. Hill's motion to suppress the search of the storage unit.

## II.   Remaining Motions

The court DENIES the remaining motions. These are:

### A.   Motion to Dismiss (Doc. 41)

Filing pro se, Mr. Hill points attention to information that could discredit the testimony of the confidential informant, whom he identifies as a former girlfriend. He also identifies alleged

discrepancies in statements by the officers who arrested him. Some of the evidence he points to may be admissible in his defense at trial. None of it supports a dismissal of the indictment. The motion to dismiss is denied.

### B.  Motion to Suppress (Doc. 45)

This motion addresses issues related to the search of the storage unit. Filing pro se, Mr. Hill identifies many of the issues presented in his attorney's subsequent filing. The court denies the motion to suppress for the reasons stated above.

### C.  Motion for Discovery (Doc. 49)

Mr. Hill has filed a one-line motion seeking "all discovery materials." The motion is unnecessary. He is entitled to discovery under Fed. R. Crim. P. 16. If there is an issue or shortcoming, he and his attorney must raise it with the court with specificity. The one-line motion for discovery is denied without prejudice to his right to renew the motion to deal with a particular problem or concern.

### D.  Motion for *Franks* Hearing (Doc. 50)

The court denies this motion for two reasons. First, it is moot because the two investigators primarily responsible for seeking the state search warrants testified in the suppression motion. Second, a *Franks* motion is directed at claims that law enforcement submitted material false statements in support of a search warrant application. After two half-days of testimony, the defense has not directed the court to any such statements. Nor has the defense identified information withheld from either the state or the federal court judges who ruled on the three warrant applications.

Issues concerning the credibility of Task Force Officer Christopher May or the confidential informant may be admissible if these witnesses testify at trial.[1] But information that discredits Officer May is not relevant to the suppression motion because he plays no part in the application and his credibility was not placed before the state or federal judges. Similarly, the information that the confidential informant was previously arrested for shoplifting and did not undergo a body cavity search before the controlled purchase hardly meets the standard of a false statement sufficient to call the warrant application into question.

### E.    Motion for Impeachment (Doc. 51)

This is an issue for trial. The motion is denied without prejudice to Mr. Hill's right to seek to impeach any witness called against him subject to the rules of evidence.

### F.    Motion for Extension of Time (Doc. 56)

Denied as moot. This motion was filed on October 20, 2022, long before the replacement of Mr. Hill's prior attorney by his present counsel Mr. Henry. Mr. Hill and Mr. Henry have now had the benefit of five months to supplement the record on any of these motions.

### G.    Motion for Discovery (Doc. 58)

In place of the one-line motion for discovery previously filed (Doc. 49), Mr. Hill filed pro se a comprehensive request for information about his case. He now has the advantage of new counsel. If he has not received some part of this information, he may renew his motion with specificity. The court denies the pro se motion as overly broad because it seeks information not

---

[1] TFO May was present at Mr. Hill's post-arrest interview.

9

directly related to his case.  The denial is without prejudice to his right to seek additional

discovery through counsel.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18th day of April, 2023.

Geoffrey W. Crawford, Chief Judge
United States District Court

10